Kim J. Landsman (KL 0509)
John C. Knapp (JK 4210)
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

*Attorneys for Plaintiff Hasbro, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

HASBRO, INC.,

      Plaintiff,

   - against -

RJ SOFTWARES, RAJAT AGARWALLA and
JAYANT AGARWALLA,
      Defendants.

------------------------------------ x

**08 Civ. 6567 (PAC)**

**FIRST AMENDED COMPLAINT**

**Jury Trial Demanded**

   Plaintiff Hasbro, Inc. ("Hasbro"), through its undersigned counsel, for its first amended complaint against Defendants Rajat Agarwalla, Jayant Agarwalla and RJ Softwares (collectively "RJS") alleges as follows:

## INTRODUCTION

   1. This is an action for trademark and copyright infringement against Rajat and Jayant Agarwalla and their company, RJ Softwares. Their online games called "Scrabulous," and "Lexulous" copy the essential and original elements of Hasbro's venerable and famous SCRABBLE® crossword board game. The "Scrabulous" game uses a name that is confusingly similar and therefore likely to cause consumer confusion or mistake as to source or origin.

2. Since the original complaint was filed and "Scabulous" was removed from the most popular social networking site, Facebook, defendants have tried to persuade Facebook users to switch to a slightly modified version of "Scrabulous" that they call "Wordscraper," which is also available on Facebook. The modifications at best, however, constitute the creation of a derivative work of the SCRABBLE crossword game that is insufficient to avoid copyright infringement. More recently, defendants launched a new website at www.lexulous.com that offers the same "Scrabulous" game under a new title.

## PARTIES

3. Plaintiff Hasbro is a corporation duly organized and existing under the laws of the State of Rhode Island, with its principal place of business in Pawtucket, Rhode Island. Hasbro is a worldwide leader in the design, manufacture, and marketing of toys, games and puzzles.

4. Upon information and belief, Rajat Agarwalla and Jayant Agarwalla are citizens and residents of India and formed RJ Softwares under the laws of the Nation of India. Its principal place of business is in Kolkata, West Bengal, India.

5. Upon information and belief, Rajat and Jayant Agarwalla personally instigated, directed, and controlled the unlawful activities complained of herein.

## JURISDICTION

6. This action arises under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c), and the Copyright Act, 17 U.S.C. § 501. This Court therefore has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), as well as 28 U.S.C. § 1331 (action arising under the laws of the United States), § 1338(a) (action arising under an Act of Congress relating to copyrights and trademarks), and § 1367 (supplemental jurisdiction over non-federal claims sufficiently related to federal claims).

7. This Court has personal jurisdiction over the defendants because they have committed infringing acts in the State of New York.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and (d), and 1400(a).

## FACTUAL ALLEGATIONS

### The Origins of the SCRABBLE® Crossword Game and Hasbro's Ownership of It

9. The SCRABBLE® crossword game is a word-based board game in which 2 to 4 players earn points by forming words horizontally or vertically on a two-dimensional board from 7 randomly selected letters.

10. The origins of the SCRABBLE® crossword game may be traced to the depths of the Great Depression, when in 1931 an out-of-work architect in Poughkeepsie, New York, named Alfred Mosher Butts invented a game he called "Lexico." Over the next seventeen years Butts tinkered with the design and play of Lexico and hand-crafted over 200 games. An entrepreneur and purchaser of one of Butts' early hand-made games named James Brunot bought the rights from Butts, changed the game's name to "SCRABBLE," and filed copyright and trademark registrations for the game in 1948.

11. In 1953 Brunot licensed the rights in the United States and Canada to Selchow & Righter Co., and in 1968 he sold the rights for the world outside the United States and Canada to a company called J.W. Spear & Sons.

12. In 1986, Selchow & Righter Co., sold its United States and Canadian rights to Coleco, which, a year later, sold them to Milton Bradley Company, then a wholly owned subsidiary of Hasbro that was subsequently merged into Hasbro.

13. In 1994, J.W. Spear and Sons was acquired by Mattel Inc., which today owns the rights outside of the United States and Canada.

3

## The Success and Fame of the SCRABBLE® Crossword Game and Its Trademark

14. In the over 75 years since its creation, SCRABBLE® has become one of the most popular and well known board games, with an intensely loyal following. Over 100 million SCRABBLE® games have been sold in 29 languages in over 100 countries around the world.

15. Annual SCRABBLE® tournaments are held in different languages around the world. National SCRABBLE® associations have been formed in dozens of countries, including the United States. The National SCRABBLE® Association of the United States describes itself as "operat[ing] in a partnership between SCRABBLE enthusiasts and Hasbro, Parker Brothers' parent company. Founded in 1978, it is the official organization of North America's 10,000 tournament SCRABBLE game players. The NSA is in constant contact with Hasbro's marketing and public relations departments, finding new ways the SCRABBLE culture can help market the game." Its annual championship tournament was recently the subject of a theatrically released motion picture called "Word Wars," described as "a look at the obsessive world of competitive Scrabble," another film called "Scrabylon," and a book entitled "Word Freak."

16. Computer and video game versions of SCRABBLE® have been released for various operating and gaming systems, including PC, Mac, Amiga, Commodore 64, Game Boy Color, Game Boy Advance, Nintendo DS, PlayStation, PlayStation 2, Game.com, Palm OS, Amstrad CPC, and mobile telephones.

17. Since its acquisition of the game, Hasbro has broadly marketed and advertised the SCRABBLE® game. The game has been the subject of extensive unsolicited publicity and news articles, as well as books and films.

## Relevant Features of the SCRABBLE® Crossword Game

18. As shown in the game board depicted in Exhibit 1, the essential features of the SCRABBLE® crossword game include the following:

    A. The board is 15 squares by 15 squares.

    B. 100 tiles are provided, from which players randomly select 7 at a time to form words.

    C. 98 of the tiles have a letter centered in black, unadorned type with a corresponding point value in a subscript below and to the right of the letter; 2 blank "wild card" tiles are also provided.

    D. A specific number of tiles displaying each letter of the alphabet and of blank tiles are provided.

    E. The number and point value of each letter of the alphabet is based on Butts' calculation of the frequency of its appearance on the front page of the *New York Times*. He artificially reduced the number of S's to 4 because he felt too many would make the game too easy. The point values and distribution of the letters are:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **0 Points** | Blank x 2 | | | | | | | | |
| **1 Point** | E ×12 | A ×9 | I ×9 | O ×8 | N ×6 | R ×6 | T ×6 | L ×4 | S ×4 | U ×4 |
| **2 Points** | D ×4 | G ×3 | | | | | | | |
| **3 Points** | B ×2 | C ×2 | M ×2 | P ×2 | | | | | |
| **4 Points** | F ×2 | H ×2 | V ×2 | W ×2 | Y ×2 | | | | |
| **5 Points** | K ×1 | | | | | | | | |
| **8 Points** | J ×1 | X ×1 | | | | | | | |
| **10 Points** | Q ×1 | Z ×1 | | | | | | | |

19. The game starts with a player making a word beginning on the rose-colored square in the middle of the board. Subsequent words are formed following a crossword technique. Unless a bonus square is used, the points for each play are those determined from adding the values of the letters used.

20. The SCRABBLE® playing board has bonus squares that give the player who puts a word on them double or triple letter scores and double or triple word scores. Those squares are colored, marked, and arranged as shown in Exhibit 1.

   A. The center square is rose colored with a black star and the first player to take his or his turn receives a score that is double the value of the tiles.

   B. The 4 corner squares and the 4 squares that are mid-way along each side (that is, that are 7 squares from the corners) are deep red in color and are labeled and award the player a "triple word score." There are 8 total "triple word score" squares.

   C. Starting with the tile diagonally closer to the middle of the board from each corner "triple word score" square, the next four squares diagonally toward the center of the board are rose in color and are labeled "double word score." There are 16 total "double word score" squares.

   D. "Triple letter score" squares are dark blue and "double letter score" squares are light blue. They form an "X" pattern through the center of the board and pyramid shapes off the sides of the board with the dark blue "triple letter score" squares forming the outer points of the "X" and the second level of the pyramids. There are 12 dark blue "triple letter score" squares and 24 light blue "double letter score" squares.

6

21. The game ends when a player uses the last of his tiles. The player who first does so receives the point values of all unplayed tiles. The value of each player's unplayed tiles is subtracted from his or her score, and the player with the highest score wins.

**The Official SCRABBLE® Players Dictionary**

22. Only English language words, and no proper nouns, may be used in playing the SCRABBLE® game in the United States and Canada. To determine what words may be used, Hasbro and its officially licensed and supervised National SCRABBLE® Association developed and published the National SCRABBLE® Association Official Tournament and Club Word List ("OWL") for tournament play and The Official SCRABBLE® Players Dictionary ("OSPD") for home play. Only words found in these dictionaries may be used.

23. The Official SCRABBLE® Players Dictionary is used in home play. First published in 1978, the words in it were chosen from a variety of other dictionaries, but it is not just a compendium of English words, and choices reflecting original judgments were made. Numerous words that would be found in a normal dictionary, such as proper nouns and geographic names, are not included in the OSPD. The Third Edition of the OSPD removed certain vulgar and offensive words that were not suitable for a family game. The OSPD is now in its Fourth edition.

24. The OWL, used in tournament play, is based on the OSPD but includes the vulgar and offensive words removed from later editions of the OSPD and omits definitions. It is now in its second Edition.

## SCRABBLE® Copyright and Trademark Rights

25. Hasbro is the owner of the following valid and subsisting copyrights registered in the Copyright Office:

   A. The Rules for Playing SCRABBLE® were first registered for copyright protection under registration No. AA 104547, published on December 1, 1948. Selchow & Richter Co. renewed this copyright on February 23, 1976, as number R 626418.

   B. The Gameboard for SCRABBLE® was first registered for copyright protection under registration No. K 18528 and published on December 1, 1948. Selchow & Richter Co. renewed this copyright on February 23, 1976, under registration number R 626417.

   C. The First Edition of the Official SCRABBLE® Players Dictionary was registered for copyright protection under registration No. TX 48841 and was first published on May 16, 1978. The copyright was assigned from G. & C. Merriam Company to Selchow & Righter Company on October 2, 1978. Selchow & Righter Company was purchased by Coleco Industries in 1985 and Coleco Industries assets, including the rights to The Official SCRABBLE® Players Dictionary, were purchased by Hasbro in 1989. The Second Edition was published in 1990, the Third Edition was published in 1995, and the Fourth Edition was published in 2005 and registered under registration No. TX 6-866-585.

   D. The First Edition of the Official Tournament and Club Word List was published in 1997 and the Second Edition was published in 2006 and registered under Registration No. TX 6-866-649.

Copies of these registrations are attached as Exhibit 2.

26. The SCRABBLE® name is inherently distinctive and has been registered as a trademark in the United States Patent and Trademark Office

    A. on April 25, 1950, under registration number 524,505 for "equipment and accessories for playing a board game,"

    B. on April 27, 1954, under registration number 589,217 for "scoring devices and turn-tables used in the playing of games and board games,"

    C. on February 1, 1966, under registration number 802,995 for "equipment and accessories – namely anagrams, a dice cup, cubes and a timer – for playing a word game,"

    D. on May 27, 1980, under registration number 1,136,336 for "apparatus for playing an electronic word game," and

    E. on November 26, 2002, under registration number 2,654,348 for "computer game programs."

Copies of these registrations are attached as Exhibit 3.

27. All of the above-referenced trademark registrations are valid, subsisting, and have become incontestable pursuant to 15 U.S.C. § 1065.

28. The designs of the game board and of the tiles are also inherently distinctive and have achieved great consumer recognition as originating from a single source.

**Defendants' "Scrabulous" Knock-Off**

29. Rajat and Jayant Agarwalla launched "Scrabulous" in July 2006. "Scrabulous" was available *inter alia* at www.scrabulous.com and as an add-on application at apps.facebook.com/scrabulous. *See* Exhibits 4 (Scrabulous.com homepage) and 5 (Facebook's "Scrabulous" Application page).

9

30. There is no statement of the rules of "Scrabulous." The websites state under "Rules of Scrabulous" simply that "Scrabulous is easy! You can practice a few games to get the hang of it. Some of the rules of Scrabulous *online* are..." *See* Exhibit 6 ("Rules of Scrabulous" page at Scrabulous.com) (emphasis added). There is no "offline" version of "Scrabulous." The "rules" stated thereafter are instead warnings about indigenous features of online game play. There is no comprehensive statement of the rules of "Scrabulous." A user not already familiar with the rules of the SCRABBLE® crossword game would not know how to play "Scrabulous."

31. On information and belief, until earlier this year, defendants embedded "meta tags" in their website software to attract individuals searching the internet for keywords such as "SCRABBLE online", "play SCRABBLE online," and "free online SCRABBLE."

32. On information and belief, until earlier this year, defendants included on their website hyperlinks to official SCRABBLE® webpages, resources such as the official SCRABBLE® rules, and also other websites offering unauthorized and infringing versions of SCRABBLE®.

33. On information and belief, until earlier this year, defendants included on their website sections titled "Basics of SCRABBLE," "Rules of SCRABBLE" and "SCRABBLE Online." The Rules section of the website also linked to the official SCRABBLE® rules.

34. On information and belief, until earlier this year, defendants included on their website a confusing and inaccurate disclaimer that read "Scrabulous is a registered trademark of J.W. Spear & Son PLC and Hasbro Inc. Any and all uses of the word "Scrabulous" on these pages refers to this trademark. This webpage in no way is an attempt to confuse the

visitor that it is the web page of Mattel or Hasbro brand Scrabulous...You have come to the wrong place if you are looking for the official Scrabulous, Mattel or Hasbro website."

35. Defendants have conceded that Scrabulous is essentially an online version of SCRABBLE® by stating "It's not really different."

36. The "Scrabulous" game board consists of 15 squares by 15 squares. *See* Exhibit 7 ("Scrabulous" boards at Scrabulous.com and Facebook.com).

37. The "Scrabulous" game board consists of the identical pattern, colors and award values of bonus squares as the SCRABBLE® board described in paragraphs 17 to 19. *Compare* Exhibits 1 and 7.

38. The "Scrabulous" game tiles are identical to the SCRABBLE® game tiles described in paragraph 17.

39. The Scrabulous website states that users outside the United States, Canada, Thailand and Israel should consult the "SOWPODS Scrabulous Dictionary," which is alleged to be a "combination of the OSPD and OSW word lists." Users inside those countries should use the "Tournament Word List dictionary." *See* Exhibit 8 ("Scrabulous Dictionaries," "SOWPODS Dictionary" and "TWL (Tournament Word List) Dictionary" pages at Scrabulous.com). Links are provided where users may download the complete Tournament Word List and SOWPODS "Scrabulous" Dictionary at www.stackwords.com, a domain registered to RJS. *See* Exhibit 9 ("SOWPODS Dictionary" page with download dialogue box and "TWL (Tournament Word List) Dictionary" page with download dialogue box).

40. There is no "SOWPODS Scrabulous Dictionary"; the website instead uses the official international tournament word list.

41. There is no Scrabulous "Tournament Word List;" the website instead uses the OWL that is edited and published by Hasbro's authorized licensee as described in paragraphs 21 to 23.

42. Defendants sell merchandise bearing the "Scrabulous" name and the image of a tile bearing the letter "S" and a dot in the position of the subscripted point value on SCRABBLE® tiles. *See* Exhibit 10.

**Defendants' "Wordscraper" Modification**

43. Upon information and belief, Rajat and Jayant Agarwalla launched "Wordscraper" in or around January 2008, but did not attempt to promote it until "Scrabulous" was taken down from Facebook soon after this litigation began. "Wordscraper" is available as an add-on application at apps.facebook.com/wordscraper. *See* Exhibit 11 (Facebook's Wordscraper homepage).

44. Since the filing of the Complaint in this action, and the removal of Scrabulous from facebook.com, defendants have promoted Wordscraper as an alternative to Scrabulous.

45. There is no statement of the rules of "Wordscraper." Under "Rules of Wordscraper" it is only explained that "The rules of Wordscraper are easy to understand... because you make them! When you create a board, you select the special squares and decide where to place them on the board." *See* Exhibit 12 ("Rules of Wordscraper"). A user not already familiar with the rules of the SCRABBLE® crossword game would not know how to play "Wordscraper."

46. The "Wordscraper" game board is a 15 by 15 grid. *See* Exhibit 13.

47. In the standard form of "Wordscraper," the letter tiles are identical in point value to the letter tiles in the SCRABBLE® crossword game. *See* Exhibit 14.

48. The distribution of letter tiles in "Wordscraper" is substantially similar to the distribution of tiles in the SCRABBLE® crossword game.

49. "Wordscraper" players must form words from 7 randomly selected tiles.

50. The game board includes bonus value spots that award double and triple (and higher) letter and double and triple (and higher) word bonuses.

51. "Wordscraper" allows players to place the bonus values anywhere on the game board before beginning a game. "Wordscraper" players may save game board bonus value patterns to be reused in subsequent games. A "Wordscraper" player may therefore recreate the same pattern of bonus values on the SCRABBLE® crossword game board and save it for future use. In this way, it facilitates and encourages users to re-create the SCRABBLE® game board and virtually identical gameplay. *See* Exhibit 15.

52. "Wordscraper" players choose between playing with the "TWL" and "SOWPODS" dictionaries. *See* Exhibit 16.

53. There is no "TWL;" instead "Wordscraper" uses the National SCRABBLE® Association Official Tournament and Club Word List.

54. The "Wordscraper" application provides links to www.scrabulous.com where players may download the National SCRABBLE® Association Official Tournament and Club Word List. *See* Exhibit 17.

55. Defendants have no license, permission, or authorization from Hasbro for any of their activities.

**Defendants' "Lexulous" Modification**

56. On or around October 1, 2008, the defendants disabled the website at www.scrabulous.com and launched a new website at www.lexulous.com. The game available at

13

www.lexulous.com, called "Lexulous," is identical in all material respects to "Scrabulous" as described in paragraphs 29 through 42. *See* Exhibit 18.

57. The sole material change is of the name from Scrabulous to Lexulous. The game board, tiles, game play and dictionaries are identical.

58. Though not available to play on Facebook.com, a Lexulous "Fan Page" has been launched on Facebook that attracts Facebook users (many of whom are current Wordscraper and/or former Scrabulous players) to Lexulous.com. (Exh. 19)

## FIRST CLAIM (FOR COPYRIGHT INFRINGEMENT)

59. Hasbro hereby incorporates by reference paragraphs 1 through 13, 18 through 25, and 29 through 58 as if fully set forth herein.

60. Defendants have infringed Hasbro's copyrights in the SCRABBLE® crossword game and The Official SCRABBLE® Players Dictionary by copying and publicly displaying and/or preparing or authorizing the preparation of derivative works of copyrightable matter in Hasbro's SCRABBLE® crossword game and The Official SCRABBLE® Players Dictionary without Hasbro's consent or authorization.

61. By reason of the foregoing, Defendants have been unjustly enriched and Hasbro has been irreparably harmed, has no adequate remedy at law, and has been damaged in an amount to be determined by the trier of fact.

62. Defendants' infringement of Hasbro's copyrights has been deliberate, willful and in utter disregard of Hasbro's rights.

## SECOND CLAIM (FOR TRADEMARK INFRINGEMENT)

63. Hasbro hereby incorporates by reference paragraphs 1 through 21, 26 through 58 as if fully set forth herein.

14

64. Defendants' use of the "Scrabulous" name, SCRABBLE® gameboard design, SCRABBLE® tiles, as well as their use of the SCRABBLE® name in metatags and otherwise in promoting their game are likely to cause confusions, mistake, deception and/or create the misleading impression that defendants are licensed by, affiliated with, endorsed by, or in some way associated with Hasbro.

65. By reason of the foregoing, defendants have infringed Hasbro's trademarks in the SCRABBLE® crossword game in violation of sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a).

66. Defendants' unlawful acts have unjustly enriched them and have caused and continue to cause irreparable injury to the value and goodwill of the SCRABBLE® crossword game trademarks, as well as to Hasbro's business, goodwill and reputation. In addition, Hasbro has been damaged in a monetary amount to be determined at trial.

67. The unlawful acts alleged herein have been deliberate, willful, and in utter disregard of Hasbro's rights.

### THIRD CLAIM (FOR TRADEMARK DILUTION)

68. Hasbro hereby incorporates by reference paragraphs 1 through 21, 26 through 58 as if fully set forth herein.

69. By reason of the foregoing, and in the alternative, defendants have diluted Hasbro's famous trademarks in the SCRABBLE® crossword game in violation of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), New York General Business Law § 360(l), and the anti-dilution statutes and common law of other states.

70. Defendants' unlawful acts have caused and continue to cause irreparable injury to the value and goodwill of the SCRABBLE® crossword game trademarks, as well as to Hasbro's business, goodwill and reputation.

71. The unlawful acts alleged herein have been deliberate, willful, and in utter disregard of Hasbro's rights.

### FOURTH CLAIM (FOR COMMON LAW UNFAIR COMPETITION)

72. Hasbro hereby incorporates by reference paragraphs 1 through 21, 26 through 58 as if fully set forth herein.

73. By reason of the foregoing, Defendants have engaged in unfair competition in violation of the common law of New York and numerous other states.

74. Defendants' unlawful acts have unjustly enriched them and have caused and continue to cause irreparable injury to the value and goodwill of the SCRABBLE® crossword game trademarks, as well as to Hasbro's business, goodwill and reputation. In addition, Hasbro has been damaged in a monetary amount to be determined at trial.

75. The unlawful acts alleged herein have been deliberate, willful, and in utter disregard of Hasbro's rights.

**WHEREFORE,** Hasbro demands judgment against defendants as follows:

A. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, 17 U.S.C. § 502, and 15 U.S.C. § 1116, permanently enjoining defendants, their agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them,

   i. from advertising, displaying, promoting, distributing, selling, offering to sell, or licensing the "Scrabulous," "Wordscraper," and "Lexulous" games and any other substantially similar games; and

     ii.  from using the term "Scrabulous," the SCRABBLE® tiles and game board, or any other word or image likely to cause confusion or mistake as all or part of a trademark on or in connection with a game.

  B.  Ordering defendants to disable the URLs www.scrabulous.com, and www.lexulous.com and deny access to the "Scrabulous", "Wordscraper" and "Lexulous" games from Facebook.com and any other websites and by any other means.

  C.  Ordering defendants to file with this Court and serve on Hasbro within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which defendants have complied with the injunction.

  D.  Awarding Hasbro, pursuant to 17 U.S.C. § 504, its statutory or actual damages suffered as a result of the copyright infringement, and any profits of defendant not taken into account in computing the actual damages.

  E.  Awarding Hasbro, pursuant to 15 U.S.C. § 1117(a) and the common law, defendants' profits, Hasbro's damages, and the costs of the action.

  F.  Awarding Hasbro its reasonable attorneys fees and full costs of this action pursuant to 17 U.S.C. § 505.

  G.  Declaring this to be an "exceptional case" under § 35(a) of the Lanham Act, 15 U.S.C. § 1117, and awarding Hasbro its reasonable attorneys fees and full costs.

  H.  Granting Hasbro any other remedy to which it may be entitled as provided for in 17 U.S.C. §§ 502-505; 15 U.S.C. §§ 1116-1118, 1125(c); and under the common law.

  I.  Grant Hasbro such other and further relief as the Court deems just and proper.

## Jury Trial Demand

Hasbro demands trial by jury of all issues so triable.

Dated: New York, New York
       November 3, 2008

*/s/ Kim J. Landsman*

Kim J. Landsman (KL 0509)
John C. Knapp (JK 4210)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone 212-336-2980
Facsimile 212-336-2985
Email: kjlandsman@pbwt.com

Attorneys for Plaintiff Hasbro, Inc.